UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM CRAVEN,

                    Plaintiff,

        v.                                    **OPINION AND ORDER**

CITY OF NEW YORK, NEW YORK CITY                20 Civ. 8464 (ER)
POLICE DEPARTMENT, CHIEF JAMES
SECRETO, JOHN DOES (1-5),

                    Defendants.

Ramos, D.J.:

        William Craven brings this suit against the City of New York, the New York City Police

Department ("NYPD"), Chief James Secreto ("Secreto"), and several John Does (collectively,

"Defendants"), alleging violations of the Age Discrimination in Employment Act ("ADEA"),

Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 621 et seq., the New York State

Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").

Specifically, Craven alleges that he (1) suffered discriminatory treatment because of his age and

status as a victim of domestic violence, (2) was subjected to a hostile work environment, and (3)

faced retaliation for filing a complaint with the Equal Employment Opportunity Commission

("EEOC"), and for filing this lawsuit.

        On September 14, 2021, Defendants moved pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure to dismiss all claims.  For the reasons set forth below, defendants'

motion is GRANTED.

## I.      BACKGROUND

a.  Facts

Craven, who is 49 years old, began working for the NYPD in 2002.  ¶ 14.[1]  He is now a Sergeant, having been promoted in 2009.  ¶ 17.  In 2014, he became the Housing Director of the Sergeant's Benevolent Association ("SBA"), and was tasked with overseeing other SBA delegates throughout New York City.  *Id.*

Craven alleges that, in October 2016, he obtained a restraining order against the mother of his child in relation to a domestic incident.  ¶ 19.  He also alleges that the following month, she, in turn, obtained a restraining order against him.  ¶ 20.  According to Craven, the NYPD was aware of these restraining orders and, as a result, placed Craven on modified duty.  ¶¶ 21–22.  In particular, Craven alleges he was transferred to PSA2 VIPER[2] and stripped of his gun and badge. ¶¶ 22–23.  Craven alleges upon information and belief that "a transfer to VIPER is considered a severe demotion and is a *de facto* punishment within the NYPD."  ¶ 26.  Craven remained assigned to PSA2 VIPER for approximately one year.  ¶ 25.

Over the next two years, legal disputes between Craven and the mother of his child continued.  According to Craven, in May 2017, a New Jersey family court issued two further restraining orders, one against him and one against the mother of his child.  ¶ 27.  The restraining order against Craven prohibited him from carrying a firearm within the State of New Jersey.  ¶ 39.  Craven alleges that, after this restraining order was issued, he was transferred to PSA9 VIPER.  ¶ 29.  Craven believes this transfer, like his earlier transfer, was discriminatory and based on his status as a victim of domestic violence.  He alleges that in January 2018, he

---

[1] Unless otherwise noted, citations to "¶" refer to the Amended Complaint, Doc. 24.

[2] Craven does not define "PSA2 VIPER."  The Defendants also do not define this term.

requested a meeting with Secreto to discuss what he calls the "constant discriminatory transfers." ¶ 30.  According to Craven, he was never granted a meeting with Secreto.  ¶ 31.

Craven was arrested in April 2018 when the mother of his child filed a criminal complaint alleging he had violated the restraining order.  ¶ 33.[3]  As a result of this, he alleges, the NYPD placed him on a thirty-day suspension and then transferred him to PSA7 VIPER.  ¶ 35–36.

Craven claims that soon after his return from suspension, he received a letter from the NYPD stating that he would need to have the New Jersey restraining order amended or would face the possibility of termination.  ¶ 38.  Then, in September 2018, Craven was charged with making threats to the mother of his child, and was immediately suspended by the NYPD.  ¶ 40.  One month later, in October 2018, the New Jersey restraining order against Craven was dismissed on appeal.  ¶ 41.  At that time, the restraining order against the mother of Craven's child remained in effect.  *Id.*  After his return from suspension, Craven alleges, he was transferred to Manhattan VIPER.  ¶ 43.[4]

Craven also alleges that Secreto and the NYPD discriminated against him on the basis of his age.  In particular, he alleges that the repeated transfers, suspensions, and demotions, in addition to constituting discrimination relating to his status as a victim of domestic violence, also were part of what he calls "road therapy," a practice by which the NYPD forces older employees into retirement by transferring them to undesirable and onerous assignments.  ¶¶ 45–46.  As a result of undergoing these transfers, Craven resigned from his position as the Housing Director

---

[3] According to Craven, he was eventually acquitted of the charge at an unspecified time.  ¶ 34.

[4] At some unspecified date the criminal charges against Plaintiff were eventually dismissed.  ¶ 40.

of the SBA, a position he had held since 2014.  ¶ 17, ¶ 48.  In support of his argument that these transfers resulted from age discrimination, Craven identifies 11 younger employees of the NYPD who, despite facing criminal charges that were similar to or more serious than those brought against him, allegedly did not face as many disciplinary transfers as Craven following their arrests.  ¶¶ 52–66.

On May 7, 2020, Craven filed a complaint with the EEOC alleging Defendants discriminated against him because of his age.  ¶ 4.  At some unspecified date shortly after the EEOC complaint was filed, Craven was transferred to the Police Academy in Queens.  ¶ 49.  As a result of this transfer, he "frequently had to wake up at 3:30 am to ensure he was on time to work."  ¶ 51.  Approximately two months later, on June 24, 2020, Craven explains, a civilian employee ("the Assistant Manager") was assigned to an office that Craven had expected would be assigned to him.  ¶¶ 68, 69.  Although Craven believed he outranked this employee, he was told that she was his boss.  *Id.*  Later, Craven alleges he found a note on her computer monitor stating that she was "THE BOSS."  ¶ 71.  Craven felt that this note was placed on her computer in an effort to harass, retaliate, and discriminate against him.  ¶¶ 71–72.

On July 13, 2020, Craven received a right to sue letter from the EEOC.  ¶ 5, Doc. 24-1. In the following months, Craven continued to experience instances of allegedly discriminatory mistreatment.  Specifically, Craven alleges that in September 2020, he was informed that the Executive Director of the Police Academy ordered Craven's office to be moved to accommodate another civilian employee.  ¶ 74.  Craven believed that he also outranked this employee and understood the change of office to be another effort on the part of Defendants to harass and ostracize him.  *Id.*  On October 9, 2020, Craven filed the instant complaint.  Doc. 1.

On November 13, 2020, Craven received a text message from the Assistant Manager that allegedly had a passive-aggressive, authoritative, and demeaning tone.  ¶ 75.  According to Craven, over the next several months, he received two emails that he understood to be written in a similarly authoritative and demeaning tone.  ¶¶ 76–77.  One of these emails was sent by the Assistant Manager, the other by the new civilian principal that had been given Craven's office.  ¶¶ 74, 76–78.  Craven does not allege what was said in any of these emails or text messages.  Craven does believe, however, that these communications, along with the issues regarding his office placement, ¶¶ 69, 74, resulted from his decision to file an EEOC complaint.  ¶ 81.

By March 2021, all Defendants had been served with the Complaint.  Then, on June 24, 2021, he learned that Defendants had commenced a termination proceeding against him.  ¶ 82.  On June 30, 2021, Craven filed an amended complaint alleging retaliation in response to this lawsuit.  Doc. 24.  On September 14, 2021 Defendants moved to dismiss the amended complaint.  Doc 30.

## II.    LEGAL STANDARD

The question on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Justice v. Nath,* 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiffs statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of plaintiff's claims.  *Halebian v. Berv,* 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 155 (2d Cir. 2006)).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). This requirement does not, however, apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

## III.   DISCUSSION

### A.   Craven's OWBPA Claims Are Dismissed

Craven alleges that, in violation of the OWBPA, the Defendants discriminated against him because of his age and retaliated against him for his participation in protected activity. In 1990, Congress amended the ADEA by enacting the OWBPA, which was "designed to protect the rights and benefits of older workers." *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426–27 (1998). The OWBPA buttresses the protections of the ADEA by providing that "[an] individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary" and complies with certain enumerated safeguards. *Id.* (citing 29 U.S.C. § 626(f)(1)).

Since then, several courts in this district have ruled that the OWBPA does not create a private cause of action for either age discrimination or retaliation claims. *See Barrer-Cohen v.*

6

*Greenburgh Cent. School Dist.*, No. 18 Civ. 1847 (NSR), 2019 WL 3456679, at *6 (S.D.N.Y.

July 30, 2019) (determining the plaintiff's OWBPA retaliation claim failed because "the

OWBPA does not create a private cause of action"); *Jiggetts v. United Parcel Serv.*, No. 14 Civ.

8291 (AJN), 2017 WL 1164698, at *5 (S.D.N.Y. Mar. 27, 2017) ("[T]he OWBPA does not give

rise to a cause of action separate from a violation of the ADEA"); *Grays v. SDH Educ. West*,

*LCC*, No. 16 Civ. 666 (DAB), 2017 WL 2240227, at *5 (S.D.N.Y. Mar. 23, 2017) ("OWBPA

does not establish a cause of action for age discrimination").

      In the instant case, Plaintiff does not cite to any specific provisions of the OWBPA and

has not introduced facts that would suggest that the Act is relevant to this case.  Indeed, Craven

makes no allegations that he was pressured or forced into waiving his rights under the ADEA.

      Because the OWBPA does not provide an independent cause of action for Craven's age

discrimination and retaliation claims, Craven's OWBPA claims are dismissed.

    B.  <u>Plaintiff's Age Discrimination and Hostile Work Environment Claims Are Time-Barred</u>

      Under the ADEA, a plaintiff must initiate civil action within 300 days of when the

alleged unlawful practice occurred.  *See O'Malley v. GTE Service Corp.*, 758 F.2d 818, 820 (2d

Cir. 1985).  Craven filed a charge with EEOC on May 7, 2020.  Therefore, any discriminatory

action taken against Craven prior to July 12, 2019 is time-barred, unless he can establish that

Defendants engaged in a continuing violation of the ADEA.  When a continuing violation is

established, the last act of discrimination "in furtherance of a continuous practice and policy of

discrimination triggers the commencement" of the statutory time period.  *Rose v. Port Authority*

*of New York and New Jersey*, 13 F. Supp. 2d 516, 520 (S.D.N.Y. 1998) (citing *Gomes v. Avco*

*Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992) (internal quotation marks omitted)).

The continuing violation doctrine is disfavored and will only be applied upon a showing of compelling circumstances. *Id*. (citing *Lloyd v. WABC–TV,* 879 F. Supp. 394, 399 (S.D.N.Y. 1995)). Where the circumstances reflect "a dogged pattern of disparate treatment that persisted unremedied, despite [plaintiff's] complaints, over a number of years," the application of the continuing violations doctrine may be appropriate. *Cable v. New York State Thruway Authority,* 4 F. Supp. 2d 120, 125 (N.D.N.Y.1998) (alteration in original) (citations and quotation marks omitted). However, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp*., 10 F.3d 46, 53 (2d Cir. 1993) (citing *Stoller v. Marsh,* 682 F.2d 971, 975 (D.C. Cir. 1982) (plaintiff must allege an unlawful program of discrimination rather than specific instances of discrimination)) (overturned on other grounds). In other words, a "pattern or practice" may not be established by a showing of "discrete discriminatory acts." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002). Instead, a plaintiff must show that the employer has engaged in an ongoing pattern or practice as a "standard operating procedure." *Spires v. MetLife Group, Inc*., No. 18 Civ. 4464 (RA), 2019 WL 4464393, at *4 (S.D.N.Y. Sept. 18, 2019) (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). Employees may only use discrete time-barred acts as background evidence to support a timely claim. *Morgan*, 536 U.S. at 102.

It follows that a claim will only be timely under the continuing violation doctrine where the plaintiff alleges that some non-time-barred acts contributed to the violation. *Lucente v. County of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020); *Morgan*, 536 U.S. at 122 ("consideration of behavior alleged outside the statutory time period […] is permissible for the purposes of assessing liability […] so long as an act contributing to that hostile environment takes place

8

within the statutory time period"). In his amended complaint, Craven alleges that the NYPD regularly engages in a practice of so-called "road therapy," and argues that the continuing violation doctrine should therefore apply. However, Craven does not put forth any allegations of violations within the 300-day period before he filed an EEOC charge. Instead, Craven alleges multiple discriminatory acts before July 12, 2019, as well as on multiple occasions *after* May 7, 2020.

A district court may hear Title VII claims "based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), superseded by statute on other grounds, Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1072). The Second Circuit has adopted this "judge-made exception" to the administrative exhaustion requirement "because it would be burdensome and wasteful to require a plaintiff to file a new EEOC charge instead of simply permitting him to assert that related claim in ongoing proceedings to adjudicate the underlying charge." *Duplan v. City of New York*, 888 F.3d 612, 624 (2d Cir. 2018). There are three situations where claims not alleged in an EEOC charge may be deemed "reasonably related": (1) where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, (2) where a plaintiff allegedly faces retaliation for filing an EEOC charge, and (3) where a plaintiff alleges incidents of discrimination that occurred after the EEOC investigation was completed, but were carried out in the same manner alleged in the EEOC charge. *Butts*, 990 F.2d at 1402–1403. The first type of reasonably related claim—where the conduct complained of would fall within the scope of the initial EEOC investigation—"is essentially an allowance of loose pleading." *Id*. at 1402. Here, Craven complains of at least one instance of allegedly

discriminatory conduct that could reasonably be expected to grow out of his initial charge of discrimination; namely, when he was transferred to the Police Academy in Queens "shortly after" he filed his EEOC complaint on May 7, 2020.  ¶ 49.

"Any 'reasonably related' claim, however, must be related to a predicate claim that is validly before the Court."  *Sahni v. Legal Servs. of the Hudson Valley*, No. 14 Civ. 1616 (NSR), 2015 WL 4879160, at *6 (S.D.N.Y. Aug. 15, 2015) (citing *Butts*, 990 F.2d at 1403).  Here, all of the allegations in Craven's EEOC charge of age discrimination and hostile work environment are time-barred, "and thus cannot serve as predicates for allegations in the complaint said to be reasonably related."  *Butts*, 990 F.2d at 1403; *see also Castiblanco v. Am Airlines, Inc*., No. 17 Civ. 5639 (KAM) (RER), 2019 WL 4751880, at *15 (E.D.N.Y. Sept. 29, 2019) ("Plaintiff has not alleged facts supporting any timely discrimination claim, distinguishing her case from those in which practical concerns would counsel in favor of allowing a plaintiff to pursue her otherwise unexhausted claims."); *Arungwa v. Brennan,* No. 17 Civ. 9586 (GHW), 2019 WL 199515, at *6 (S.D.N.Y. Jan. 14, 2019) ("Plaintiff cannot invoke the doctrine of reasonable relation because he has never exhausted his administrative remedies with respect to a claim to which he could reasonably relate back.").  In the instant case, Craven has not brought any discrimination or hostile work environment claims that were exhausted by his EEOC charge. Since a claim will only be timely under the continuing violation doctrine where the plaintiff alleges that some non-time-barred acts contributed to the violation, *Lucente*, 980 F.3d at 309, Craven may not invoke the doctrine.  Accordingly, Craven's ADEA discrimination and hostile work environment claims are dismissed as time-barred.

   C.  <u>Retaliation</u>

       1.  <u>Retaliation for Filing an EEOC Charge</u>

(i)      *The retaliation claim is not time-barred.*

Title VII and the ADEA contain nearly identical provisions forbidding retaliation for complaining of employment discrimination.  *Kessler v. Westchester County Dep't of Soc. Serv.*, 461 F.3d 199, 205 (2d Cir. 2006).  Retaliation claims under Title VII and the ADEA are therefore analyzed under the same framework.  *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017).  A retaliation claim has four elements:  "(1) the employee engaged in [a] protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action."  *Dickens*, 167 F. Supp. 3d at 522 (citations and quotation marks omitted).

"Retaliation is a theory of liability that is substantively distinct from [an] age discrimination claim."  *O'Hara v. Memorial Sloan-Kettering Cancer Ctr.*, 27 Fed. Appx. 69, 70 (2d Cir. 2001) (citations omitted).  In the Second Circuit, "the general rule … is that a claim alleging retaliation by an employer against an employee for filing an EEOC charge is reasonably related to the claims asserted in an EEOC complaint."  *Jenkins v. New York City Transit Auth.*, 646 F. Supp. 2d 464, 472 (S.D.N.Y. 2009) (citations and quotation marks omitted).  If a plaintiff has a pending EEOC charge, therefore, the court may generally assume that the exhaustion requirement is also met for a subsequent claim "alleging retaliation by an employer against an employee for filing an EEOC charge."  *Duplan v. City of New York*, 888 F.3d 612, 622 (2d Cir. 2018) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003)).  This rule holds even when the underlying age discrimination claims have been dismissed as time-barred.  *See Jenkins*, 646 F. Supp. 2d at 471–72 (citing *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1209 (2d Cir. 1993)).  Indeed, when a plaintiff alleges that her employer engaged in a retaliatory "attempt to thwart …

11

[the] exercise [of] her federal rights," that act of retaliation is generally "reasonably related" to the underlying EEOC charge, notwithstanding the viability of the discrimination claims that gave rise to the charge.  *Malarkey*, 983 F.2d at 1209.  In *Malarkey*, the Second Circuit rejected the defendant's argument that "the plaintiff's retaliation claim could not be reasonably related to the age discrimination claims in her EEOC charge because her age discrimination claims had already been dismissed when she sought to add the retaliation claim," stating: "'We see no reason why a retaliation claim must arise before administrative proceedings terminate in order to be reasonably related.  Instead, the rule is that a claim must arise only after the EEOC complaint has been filed.'"  *Id*.  Craven's retaliation claim is "reasonably related" to his original EEOC charge.  Thus, he need not exhaust all administrative remedies in order to bring this claim.  *See Duplan*, 888 F.3d at 622 (noting that the paradigmatic case for which the "reasonably related" doctrine was adopted is when retaliation occurs while the EEOC charge is still pending before the agency).

###### (ii)    Craven does not state a cause of action for retaliation.

Craven alleges that he faced numerous instances of retaliation after he filed his EEOC complaint:  he was transferred to the Police Academy in Queens, ¶ 49; an office that Craven expected would be assigned to him was assigned to another employee, ¶¶ 68–70; someone— Craven does not allege who—wrote "THE BOSS" on a colleague's computer monitor, in what Craven believes was an attempt to humiliate him because of his age and rank, ¶ 71; and his office was moved to accommodate a new civilian employee, whom Craven believed he outranked, ¶ 74.

Filing an EEOC charge to complain of allegedly discriminatory actions on the part of an employer is a protected activity.  *See Duplan*, 888 F.3d at 625.  In order to make out a *prima*

*facie* retaliation claim, therefore, Craven need only show that the NYPD was aware that he filed this charge, that there was a causal connection between the EEOC charge and any such adverse action, and that any of the alleged instances of retaliation constituted adverse employment actions.

Craven fails to establish that the Defendants were in fact aware that he had filed a charge with the EEOC when he was transferred to the Police Academy in Queens.  Instead, Craven merely alleges that he was transferred "shortly after" he filed the EEOC charge, and states in a conclusory fashion that he was transferred because he filed this complaint.  ¶¶ 49–50.  Not only does Craven fail to allege the specific temporal proximity between the filing of the EEOC charge and his transfer, but he also does not provide any other evidence supporting a causal connection between the EEOC charge and the transfer.  *Kitani v. New York City Transit*, No. 19 Civ. 1043 (VSB), 2022 WL 874781, at *8 (S.D.N.Y. Mar. 24, 2022) (requiring that temporal proximity be very close when no factual allegations of retaliatory motive are present).  Accordingly, it is not possible to infer either that Defendants had knowledge of the charge at the time of the alleged retaliatory action, or that there was a causal connection between the EEOC charge and the transfer.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (a retaliatory purpose can be shown indirectly by timing only when the protected activity is followed closely in time by an adverse employment action).

Moreover, even if it were assumed that Defendants were aware that Craven filed an EEOC charge and that it was a but-for cause of his transfer, Craven nonetheless has not demonstrated that he suffered an adverse employment action.  An involuntary transfer can constitute an adverse employment action only if the plaintiff demonstrates that the transfer created "a materially significant disadvantage" in working conditions.  *Kessler*, 461 F.3d at 205.

To make this showing, Craven must "proffer objective indicia of material disadvantage; subjective, personal disappointment is not enough." *Beyer v. County of Nassau,* 524 F.3d 160, 164 (2d Cir. 2008) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)) (internal quotation marks omitted).

Craven does bring some evidence of disadvantage when he alleges that, as a result of his transfer to the Police Academy in Queens, he "frequently had to wake up at 3:30 am to ensure he was on time to work." ¶ 51. *See Davis-Garett v. Urban Outfitters, Incorporated*, 921 F.3d 30, 40 (2d Cir. 2019) (holding that courts must look to the "specific circumstances" of the Plaintiff's treatment in order to determine whether an adverse employment action has occurred); *Burlington Northern and Sante Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) (Title VII's "anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment"). When a transfer results in a longer commute to work, however, that is generally not enough, on its own, to establish an adverse employment action. *See Witkowich v. Holder*, No. 05 Civ. 7756 (GBD), 2010 WL 1328364, at *4 (S.D.N.Y. Mar. 31, 2010) (holding that an allegedly "punitive" transfer "to a significantly less desirable post geographically further away from his residence" was insufficient to establish adverse employment action for retaliation claim), *aff;d*, 424 Fed. Appx. 20 (2d Cir. 2011); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 309 (E.D.N.Y. Mar. 28, 2014) (finding that the increased commute time resulting from an allegedly retaliatory transfer was insufficient to establish an adverse employment action). Instead, to show that a transfer was "materially adverse," a plaintiff must demonstrate that the adverse action to which he was subjected "could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." *Davis-Garett*, 921 F.3d at 44. Here, Craven has failed to allege any facts that

would indicate that his assignment to the Police Academy in Queens "involved a loss of money, or job responsibility, or were significant disciplinary actions, or otherwise sufficient to constitute a materially adverse employment action." *Witkowich*, 2010 WL 1328364, at *4. Moreover, under Craven's personal circumstances, it is not clear that being required to wake up early to ensure he was on time to work would have any "detrimental effect on [his] terms of employment, career, or personal life." *Id*.; *see also White*, 548 U.S. at 69 ("[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children."). As such, Craven has failed to show that his transfer to the Police Academy in Queens constituted an adverse employment action.

With respect to the other alleged instances of retaliation, Craven has failed to demonstrate any "objective indicia of material disadvantage." For instance, Craven does not show that his working conditions changed when an office that he expected would be assigned to him was assigned to another employee, or that the failure of Defendants to assign him to that preferred office was anything more than a "petty slight" or "minor annoyance." *White*, 548 U.S. at 69. Similarly, the note Craven found on a colleagues' computer monitor is not objective evidence that Craven suffered a material disadvantage; it is not even clear from the facts alleged that the note was directed to Craven. Finally, Craven does not state with any particularity how his working conditions changed when his office was moved to accommodate another employee, making it impossible to infer that he was disadvantaged by that decision. *Taylor v. City of New York*, 207 F. Supp. 3d 293, 308 (S.D.N.Y. 2016) (finding the allegations of a transfer not sufficient for the court to determine whether it was a materially adverse employment action, because the plaintiff "d[id] not provide any information as to how the transfer impacted her").

Accordingly, Craven has failed to establish a *prima facie* case for retaliation relating to the filing of his EEOC charge.

### 2. Retaliation for Filing This Lawsuit

Craven also alleges Defendants retaliated against him after he filed the instant lawsuit. Approximately four and a half months after service of process, he says he learned that the NYPD had commenced termination proceedings against him.[5]  ¶ 82.  Craven believes that this was in direct retaliation for his involvement in protected activities.  *Id*.

When retaliation related to an employee's initial EEOC charge occurs while a timely federal suit based on that underlying charge is pending, the reasonably related doctrine applies; the employee does not need to re-exhaust administrative remedies by re-filing a separate EEOC charge for retaliation.  *See Duplan*, 888 F.3d at 622; *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683 (2d Cir. 2001) (holding that acts in retaliation against an employee for filing a lawsuit were "reasonably related" to the underlying discrimination charge filed with the EEOC).

When Craven filed this lawsuit, he engaged in a protected activity.  *See Kitani,* 2022 WL 874781, at *8.  Moreover, taking the allegations in the amended complaint to be true, Craven suffered an adverse employment action when termination proceedings against him commenced.  *See Jeter v. New York City Dep't of Educ.*, No. 06 Civ. 3687 (NGG) (LB), 2012 WL 2885140, at *14 (E.D.N.Y. July 13, 2012) (the initiation of termination proceedings against the plaintiff,

---

[5] Craven does not specify how he learned that the NYPD had commenced termination proceedings against him.  ¶ 82.

along with his transfer away from his normal workplace, was sufficient to make out a *prima facie* showing of an adverse employment action).

By the time that termination proceedings against Craven were allegedly commenced on June 24, 2021, Defendants were aware of this lawsuit.[6]  Therefore, Craven need only plausibly allege that there was a causal connection between that protected activity and the initiation of termination proceedings.  "To adequately plead causation, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action[.]  'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan*, 888 F.3d 612 at 625 (quoting *Vega,* 801 F.3d at 90–91) (internal quotation marks omitted).  Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity.  *Id*.

Craven has introduced no direct evidence of retaliatory animus, except by stating on information and belief that the action was motivated by animus.  Mere legal conclusions, bare assertions, or conclusory allegations, however, are insufficient to survive a Rule 12(b)(6) motion to dismiss.  *Iqbal*, 556 U.S. 662, 678, 681.  Craven's retaliation claim can withstand this motion, then, only on a showing that the protected activity was so closely followed in time by the adverse action so as to form indirect evidence of retaliatory intent.  *Kraiem v. JonesTrading Institutional Services LLC*, 571 F. Supp. 3d 53, 59 (S.D.N.Y. 2021).

---

[6] In order to establish causality, an employer must have actual awareness of the protected activity.  *See Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001).  When the protected activity at issue is a lawsuit, service of process provides evidence of an employer's awareness.  *Id*.  An affidavit of service of summons and complaint for Defendant New York City was filed on February 16, 2021.  Doc. 11.  That document states that New York City was served on February 9, 2021 at 9:22 am.  *Id*.  An affidavit of service of summons and complaint for Defendant James Secreto was filed on March 1, 2021.  Doc. 14.  That document states that Secreto was served on February 12, 2021 at 11:25 am.  *Id*.

While there is "no firm outer limit to the temporal proximity required . . . most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." *Id*. at 60 (quoting *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019)); *see also Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) ("The time lapses between Brown's protected activities and the alleged retaliatory acts—ranging from two months to several years—were simply too attenuated to establish … retaliatory motive absent other supporting factual allegations."). In short, where temporal proximity is the sole basis for demonstrating causation, the proximity must be "very close." *Olin v. Rochester City School District*, No. 18 Civ. 6006L, 2022 WL 967707 (W.D.N.Y. Mar. 31, 2022) (quoting *Farooq v. City of New York*, 2022 WL 793117, at *4 (2d Cir. 2022) (collecting cases, and finding that a five-month gap, standing alone, is insufficient to show causation)); *cf. Hayes v. Dahlke*, 976 F.3d 259, 273 (2d Cir. 2020) (collecting cases, and noting that the Second Circuit has variously concluded that a five-month lapse could evidence a causal connection, and that a gap of three months did not). While a time period of several days may establish the requisite proximity, *Littlejohn v. City of N.Y.*, 795 F.3d 297, 319–20 (2d Cir.2015), the lapse of three and a half months may not. *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 86 (2d Cir.1990).

Here, Defendants were aware of the suit by no later than February 12, 2021. *See* Doc. 14. At least four and a half months elapsed between then and the date on which termination proceedings began around June 24, 2021. A period of over four and a half months is simply too tenuous to establish causality in the absence of any further evidence. *See Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (holding that the passage of three months was too long to suggest a causal relationship between the filing of a complaint and adverse action); *McDowell v. North Shore-Long Island Jewish Health System, Inc.*, 788 F. Supp. 2d 78, 83

(E.D.N.Y. June 2, 2011) (holding that a time period greater than three months would not support

an inference of causation where the "only potential basis for showing a causal connection …

[was] the temporal proximity between the protected activity and the adverse employment

action."). Plaintiff's claim that termination proceedings were commenced in retaliation against

this lawsuit is, therefore, unavailing. Accordingly, Plaintiff has failed to meet his burden to

establish a *prima facie* case of retaliation.

> ### 3. This Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State and City Law Claims

The doctrine of supplemental jurisdiction is traditionally "a doctrine of discretion, not of

… right." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *United

Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Under 28 U.S.C. § 1367(c)(3), if the Court

has dismissed all claims over which it has original jurisdiction, it may decline to exercise

jurisdiction over any non-federal claims over which it could have exercised supplemental

jurisdiction. Subject matter jurisdiction in the instant action is based on federal question

jurisdiction rooted in claims brought under the ADEA and OWBPA. 28 U.S.C. § 1331. Because

no federal claim remains that is subject to a merits determination by this Court, it would be

inappropriate to adjudicate Plaintiff's state law claims. *See Gibbs*, 383 U.S. 715, 726

("Certainly, if the federal claims are dismissed before trial, ... the state claims should be

dismissed as well."); *McGugan v. Aldana-Bernier*, No. 11 Civ. 342 (TLM), 2012 WL 1514777,

at *8 (E.D.N.Y. Apr. 30, 2012) ("[W]hen all federal claims are eliminated in the early stages of

litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over

remaining state law claims and dismissing them without prejudice."), *aff'd*, 752 F.3d 224 (2d

Cir. 2014). Therefore, Plaintiff's State and City law claims are hereby dismissed without

prejudice to repleading in state court.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Craven's ADEA and

OWBPA discrimination and hostile work environment claims is GRANTED with prejudice, as

they are time-barred.  His retaliation claims, as well as his NYSHRL and NYCHRL claims, are

dismissed without prejudice.  Craven may file a second amended complaint that complies with

this Opinion and Order, if at all, by August 25, 2022.  If Craven does not file a second amended

complaint by that date, the case will be closed.  The Clerk of the Court is respectfully directed to

terminate the motion, Doc. 30.

It is SO ORDERED.

Dated:    July 27, 2022
              New York, New York

_____
                    Edgardo Ramos, U.S.D.J.