UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM CRAVEN,

                Plaintiff,

– against –

CITY OF NEW YORK, JAMES SECRETO, *and* JOHN DOES 1-5,

                Defendants.

**OPINION & ORDER**

20-cv-8464 (ER)

RAMOS, D.J.:

    William Craven brings this suit against the City of New York, the New York Police Department ("NYPD"), Chief James Secreto ("Chief Secreto"), and several John Does (collectively, "Defendants"), alleging retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); age discrimination in violation of the ADEA, the Older Workers Benefit Protection Act ("OWBPA"), the NYSHRL, and the NYCHRL; a hostile work environment in violation of the NYSHRL and the NYCHRL; and discrimination on the basis of his status as a domestic violence victim in violation of the NYSHRL and the NYCHRL.

    On November 15, 2022, Defendants moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the NYPD and Chief Secreto as parties and dismiss all claims against the City of New York. Doc. 46. For the reasons set forth below, the Defendants' motion to dismiss all claims is granted in part and denied in part, their motion to dismiss the NYPD is granted, and their motion to dismiss Chief Secreto is granted in part and denied in part.

**I.    BACKGROUND**

    The Court assumes familiarity with the facts as described in its prior order. *Craven v. City of New York*, No. 20 Civ. 8464 (ER), 2022 WL 2967310, at *1–3

(S.D.N.Y. July 27, 2022).  Because the Court previously dismissed with prejudice all of the federal discrimination and hostile work environment claims alleged in the First Amended Complaint ("FAC"), *id.* at *9—and the Defendants do not present an argument opposing Craven's NYSHRL and NYCHRL discrimination and hostile work environment claims in their briefs, Doc. 47 at 5 n.1—the Court will only describe the facts relevant to Craven's retaliation claims and the NYPD's and Chief Secreto's individual liability, as well as the facts newly alleged in the Second Amended Complaint ("SAC").

    Craven, who was 48 years old at the time of filing his initial complaint, began working for the NYPD in 2002.  Doc. 41 ¶ 14.[1]  He is now a sergeant, after being promoted in 2009.  ¶ 17.  On May 7, 2020, Craven filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that the Defendants discriminated against him because of his age.  ¶ 49.  As part of his discrimination and hostile work environment claims, Craven asserted that Chief Secreto placed him on modified duty in November 2016, ¶ 20–22; never granted him a meeting to discuss his allegedly discriminatory transfers, ¶ 30–31; gave him a thirty-day suspension, ¶ 35; and subjected him to "road therapy,"[2] ¶ 45.  Craven additionally asserted that Chief Secreto had "the ability to make decisions as to [his] employment." ¶ 12.

    In the SAC, Craven explains that he filed his EEOC complaint by calling and faxing his complaint to the EEOC using a fax machine located in his NYPD workplace. ¶ 50.  This fax machine was in an unsecured area, and numerous NYPD employees had access to the machine and its document history.  *Id.*  Craven alleges that the Defendants became aware of his EEOC complaint via their access to the fax machine's document

---

[1] Unless otherwise noted, citations to "¶" refer to the Second Amended Complaint, Doc. 41.

[2] "Road therapy" is a practice by which the NYPD allegedly forces older employees into retirement by transferring them to undesirable and onerous assignments. ¶¶ 45–46.

history.  *Id.*  Craven, however, provides no facts that suggest any defendant or NYPD employee ever checked the fax machine's document history.

Craven now asserts in the SAC that an EEOC representative confirmed over the phone that they received his EEOC charge on May 7, 2020.  ¶ 51.  On June 1, 2020, a different EEOC representative told Craven over the phone that it was EEOC policy to notify the employer after receiving an EEOC charge and that his employer had already been notified of his EEOC charge.  ¶ 52.  Craven thus alleges that the Defendants were notified of his EEOC complaint on the same day or within two or three days of EEOC's receipt of his complaint on May 7, 2020.  ¶ 53.

In the FAC, Craven alleged that, on May 11, 2020, he was retaliated against by being transferred to the Police Academy in Queens.  ¶ 55–56.  Because of the transfer, he "had to wake up at 3:30 am to ensure he was on time to work."  ¶ 61.  In the SAC, Craven provides new information about this allegedly retaliatory transfer.  Craven adds that his primary job before the transfer had been supervising five to ten restricted modified officers that were conducting video surveillance.  ¶ 58.  After the transfer, his responsibilities were "downgraded" to sending out roll calls of janitors.[3]  *Id.*  He further asserts that his commute time increased, as well as his "gas and other expenses."  ¶ 60.  Finally, Craven newly alleges that he was being treated "as if he had lost his rank of sergeant" because he was assigned a cubicle at the Police Academy, whereas the three other sergeants at the Police Academy had offices.  ¶ 59.

Craven asserted in the FAC that, on June 24, 2020, a civilian employee (the "Assistant Manager") was assigned to an office at the Police Academy that Craven had expected would be assigned to him.  ¶¶ 79–80.  Although Craven believed he outranked this employee, he was told that she was his boss.  ¶ 80.  Later, Craven alleged he found a note on her computer monitor stating that she was "THE BOSS."  ¶ 82.  Craven felt that

---

[3] Craven provides no additional detail about what this responsibility entails.

3

this note was placed on her computer in an effort to harass, retaliate, and discriminate against him. ¶¶ 82–83. He, however, provides no additional facts in the SAC about these alleged instances of retaliation, beyond what he had already asserted in the FAC.

In the following months, Craven allegedly continued to experience instances of retaliatory mistreatment. Specifically, Craven alleged in the FAC that, on September 22, 2020, the civilian Executive Director of the Police Academy ordered Craven to move offices to accommodate the new civilian principal of the unit.[4] ¶ 85. Craven believed that he also outranked this civilian principal, and understood the change of office to be another effort on the part of Defendants to harass and ostracize him. *Id.* Once again, Craven provides no additional facts in the SAC about this alleged instance of retaliation, beyond what he had already asserted in the FAC.

On October 9, 2020, Craven filed his initial complaint in the Southern District of New York, naming the City of New York, the NYPD, Chief Secreto, and John Does 1-5 as Defendants.[5] Doc. 1.

Craven asserted in the SAC that he received a text message on November 13, 2020 from the Assistant Manager that allegedly had a passive-aggressive, authoritative, and demeaning tone. ¶ 86. According to Craven, over the next several months, he received two emails that he understood to be written in a similarly authoritative and demeaning tone. ¶¶ 87–88. One of these emails was sent by the Assistant Manager, the other by the new civilian principal that had been given Craven's office. ¶¶ 85, 87–88. Craven did not include what was said in any of these emails or text messages in his complaint, in either the FAC or SAC. Craven does believe, however, that these communications, along with the issues regarding his office placement, ¶¶ 80, 85, were in retaliation for his decision to file an EEOC complaint, ¶ 92.

---

[4] This allegation, at least in part, seems to contradict Craven's earlier assertion that he was assigned a cubicle at the Police Academy. ¶ 59. Accordingly, it seems that at some point between May 11, 2020 and September 22, 2020, Craven moved from a cubicle to an office.

[5] Craven received a right to sue letter from the EEOC on July 13, 2020. ¶ 5; *see also* Doc. 41-1.

4

By February 12, 2021, all Defendants had been served with the complaint. Then, on June 24, 2021, Defendants began moving for a termination proceeding against Craven as a result of "2018 charges" against him that had already been deemed unsubstantiated. ¶ 93. Craven does not provide any information about these "2018 charges" nor why, by whom, or when they were deemed "unsubstantiated." He asserts in the SAC that for the three years prior to filing the present lawsuit, the NYPD never indicated that it intended to subject him to a termination trial for the 2018 charges. ¶ 94. Craven explains that it was only after he filed the present lawsuit that the NYPD reversed course and began moving for a termination trial, allegedly in retaliation for filing this lawsuit. ¶¶ 95–96.

On June 30, 2021, Craven filed the FAC to add these allegations of retaliation in response to his lawsuit.[6] Doc. 24. On September 14, 2021 Defendants moved to dismiss the FAC. Doc 30.

In May 2022, before the Court ruled on Defendants' first motion to dismiss, Craven was subjected to a disciplinary trial by the NYPD for a discourtesy charge.[7] ¶ 97. He alleges in the SAC that the NYPD improperly relied upon expunged evidence in this disciplinary trial and further subjected him to unwarranted discipline for a non-discourtesy offense as to which the deadline to charge had already expired.[8] *Id.* As a result of this proceeding, Craven received a 30-day suspension. ¶ 98. He alleges that such disciplinary actions were in retaliation for filing the present lawsuit. ¶ 99.

The Court granted Defendants' motion to dismiss the FAC on July 27, 2022. *Craven*, 2022 WL 2967310, at *9. In its order, the Court dismissed all of Craven's federal discrimination and hostile work environment claims with prejudice because those claims were time-barred under the ADEA and OWBPA. *Id.* at *9. The Court also

---

[6] In the FAC, Craven only asserted that "Defendants commenced a termination proceeding against him." Doc. 24 ¶ 82. In the SAC, Craven explains that the proceeding was for "2018 charges" that had previously been deemed unsubstantiated.

[7] Craven does not provide any additional detail about this "discourtesy charge."

[8] Craven does not provide any additional detail about this "non-discourtesy charge."

5

dismissed Craven's retaliation claims without prejudice for failure to state a claim, and dismissed his NYSHRL and NYCHRL claims without prejudice due to lack of supplemental jurisdiction. *Id.* at *8–9.

On September 1, 2022, Craven filed the SAC—the operative complaint—which includes the new allegations regarding the May 2022 disciplinary trial, as well as additional facts about his prior allegations. The complaint alleges identical violations to the FAC: age discrimination and a hostile work environment in violation of the ADEA, OWBPA, NYSHRL, and NYCHRL; discrimination due to his status as a domestic violence victim in violation of the NYSHRL and NYCHRL; and retaliation in violation of the ADEA, NYSHRL, and NYCHRL. ¶¶ 100–152.

On November 15, 2022, the Defendants moved to dismiss the SAC in its entirety for failure to state a claim and to dismiss the NYPD and Chief Secreto as parties to the suit. Doc. 46. In its prior Order, the Court dismissed with prejudice all of Craven's federal discrimination and hostile work environment claims because they were time-barred. *Craven*, 2022 WL 2967310, at *9. Accordingly, the Court only addresses the sufficiency of Craven's retaliation claims under the ADEA, NYSHRL, and NYCHRL, as well as his discrimination and hostile work environment claims under the NYSHRL and NYCHRL. For the following reasons, the Defendants' motion to dismiss all claims is granted in part and denied in part, their motion to dismiss the NYPD as a party is granted, and their motion to dismiss Chief Secreto as a party is granted in part and denied in part.

## II. LEGAL STANDARD

The question on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath,* 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiffs statement of a claim for relief without resolving a contest regarding its

substantive merits,'" and without regard for the weight of the evidence that might be offered in support of plaintiff's claims. *Halebian v. Berv,* 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 155 (2d Cir. 2006)).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). This requirement does not, however, apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

## III.  DISCUSSION

### A.  ADEA and NYSHRL Retaliation Claims[9]

The pleading requirements for retaliation claims under the ADEA and NYSHRL are identical. *MacAlister v. Millenium Hotels & Resorts*, No. 17 Civ. 6189 (ER), 2018 WL 5886440, at *7 (S.D.N.Y. Nov. 8, 2018). A retaliation claim has four elements: (1) the employee engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Dickens v.*

---

[9] As the Court explained in its prior Order, the fact that Craven's federal discrimination claims are time-barred does not impact his federal retaliation claims. *Craven*, 2022 WL 2267310, at *5.

*Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), *aff'd*, 689 Fed. Appx. 670 (2d Cir. 2017) (unpublished) (citations and quotation marks omitted).

1. *Retaliation for Craven's EEOC Complaint*

As in the FAC, Craven realleges that he faced numerous instances of retaliation after he filed his EEOC complaint: he was transferred to the Police Academy in Queens, requiring him to wake up at 3:30 am to commute to the new location, ¶¶ 55, 61; an office that Craven expected to be assigned to him was assigned to another employee, ¶¶ 79–80; someone—Craven does not allege who—wrote "THE BOSS" on a colleague's computer monitor, in what Craven believes was an attempt to humiliate him because of his age and rank, ¶ 82; his office was moved to accommodate a new civilian employee, whom Craven believed he outranked, ¶ 85; and he received demeaning texts and emails, ¶¶ 86–88.

Craven newly alleges in the SAC that as a result of his transfer to the Police Academy, his responsibilities were diminished. ¶ 58. Instead of supervising five to ten officers as he did before the transfer, his new role entailed sending out roll calls of janitors. *Id.* Furthermore, he explains that he was assigned a cubicle at the Police Academy, even though the other three sergeants had offices. ¶ 59. Finally, Craven newly asserts that his longer commute increased his "gas and other expenses." ¶ 60.

a. *Awareness and Causation*

In its prior Order, the Court held that Craven failed to establish that the Defendants were aware of his EEOC complaint. *Craven*, 2022 WL 2967310, at *6. Relatedly, the Court held that Craven did not establish a causal connection between his EEOC complaint and the alleged adverse actions taken against him. *Id.* He failed to allege either specific temporal proximity between the EEOC complaint and the adverse action or any other evidence suggesting retaliatory animus. *Id.*

Craven has sufficiently addressed these deficiencies in the present complaint. In the SAC, he provides specific evidence that suggests the Defendants were plausibly aware of his EEOC complaint. He newly asserts that he spoke with an EEOC

8

representative on June 1, 2020 who told him that it was EEOC policy to notify employers after receiving a charge against them and that the EEOC had, in fact, notified his employer. ¶ 52. These additional facts sufficiently suggest that the Defendants were aware of Craven's EEOC complaint on or shortly after it was filed on May 7, 2020.[10] ¶ 51.

      Likewise, the SAC sufficiently establishes a causal connection between the alleged retaliation and the EEOC complaint. Causation can be sufficiently established through temporal proximity. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 92 (2d Cir. 2015) (holding that an adverse action taken three months after the plaintiff's EEOC complaint was sufficiently close in time to infer retaliatory motive). Here, Craven filed his EEOC complaint on May 7, 2020, ¶ 49, and the first instance of alleged retaliation—his transfer to the Police Academy—occurred only 4 days later on May 11, 2020. ¶ 55. On June 24, 2020, the office that Craven expected to be assigned to him was instead assigned to a civilian employee. ¶¶ 79–80. Approximately one to two weeks after that, Craven found a note which said "THE BOSS" on the Assistant Manager's monitor. ¶ 82. Finally, Craven was ordered to move offices to accommodate another civilian employee on September 18, 2020. ¶ 85. Each of these instances of alleged retaliation occurred within four months of filing his EEOC complaint. As in *Vega*, the temporal proximity between Craven's protected activity and these alleged retaliatory acts against him is sufficiently close to suggest a causal connection. *See Vega*, 801 F.3d at 92.

---

[10] The fact that the EEOC representative told Craven on June 2, 2020 that they had informed his employer does not necessarily imply that his employer had been informed prior to May 11, 2020—the date on which Craven was transferred to the Police Academy. However, the fact that it was EEOC policy to inform employers after receiving charges against them, if true, is sufficient at this stage of the litigation to plausibly suggest that the Defendants would have been notified of Craven's charge on the date EEOC received it: May 7, 2020. ¶ 51; *see also Steele-Hegg v. Computer Associates Intern., Inc.*, No. 3 Civ. 5939 (DLI) (MLO), 2007 WL 1989434, at *12 (E.D.N.Y. July 9, 2007) (finding it sufficient at the pleading stage to infer that the employer was aware of plaintiff's EEOC complaint because the plaintiff had told a third party who later told the employer's human resources department).

By contrast, the allegedly "authoritative and demeaning" texts and emails Craven received on or after November 13, 2020, ¶¶ 86–88, are not sufficiently close in time to his EEOC complaint to infer causation. The termination proceedings against him in June 2021, ¶ 93, and disciplinary hearings against him in May 2022, ¶ 97, are likewise too distant in time to establish a causal link with the EEOC complaint. Accordingly, his retaliation claims with respect to these acts are dismissed.

    b. *Adverse Actions*

Craven must also sufficiently allege that some actions taken against him were adverse. The Court held in its prior Order than Craven failed to demonstrate that he suffered *any* adverse employment actions related to his EEOC complaint. *Craven*, 2022 WL 2967310, at *6.

Regarding his transfer to the Police Academy, the Court explained that while an involuntary transfer can constitute an adverse employment action, it must create "a materially significant disadvantage" in working conditions. *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). To make this showing, Craven must "proffer objective indicia of material disadvantage; subjective, personal disappointment is not enough." *Beyer v. County of Nassau,* 524 F.3d 160, 164 (2d Cir. 2008) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)) (internal quotation marks omitted).

The fact that Craven "frequently had to wake up at 3:30 am to ensure he was on time to work," ¶ 51, does suggest some evidence of disadvantage. *Craven*, 2022 WL 2967310, at *6. However, as the Court noted in its prior Order, a transfer that results in a longer commute to work is generally not enough on its own to establish an adverse employment action. *See Witkowich v. Holder*, No. 05 Civ. 7756 (GBD), 2010 WL 1328364, at *4 (S.D.N.Y. Mar. 31, 2010) (holding that an allegedly "punitive" transfer "to a significantly less desirable post geographically further away from his residence" was insufficient to establish adverse employment action for retaliation claim), *aff'd*, 424

Fed. Appx. 20 (2d Cir. 2011); *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 327 (E.D.N.Y. Mar. 28, 2014) (finding that the increased commute time resulting from an allegedly retaliatory transfer was insufficient to establish an adverse employment action). Craven must therefore provide more evidence of disadvantage in order to establish that his transfer was an adverse employment action.

Craven does so in the SAC. First, he asserts that his longer commute resulted in increased "gas and other expenses." ¶ 60. He also alleges that his new role at the Police Academy involved "significantly diminished responsibilities and status." ¶ 57. In his prior role, he was responsible for supervising five to ten officers who conducted video surveillance. ¶ 58. Once transferred to the Police Academy, his responsibilities were reduced to sending out roll calls of janitors. *Id.* Lastly, Craven newly explains that at the Police Academy, he was assigned to work at a cubicle, whereas all three other sergeants at that location worked in offices. ¶ 59.

These new facts collectively suggest that the transfer was an adverse employment action. In retaliation cases, adverse employment actions are those which might dissuade a reasonable employee from complaining of discrimination. *Kessler*, 461 F.3d at 209. Although he technically retained his title of sergeant after his transfer, Craven's duties and responsibilities were altered in a manner which a reasonable person might deem undesirable. He was subjected to increased commuting expenses, an inferior workspace relative to his peers, and reduced work responsibilities. *See id.* (finding an adverse employment action when the plaintiff was stripped of certain managerial responsibilities and newly subject to the supervision of an employee with the same grade level). The conditions of his transfer as detailed in the SAC sufficiently establish an adverse employment action.

The Court also held in its prior Order that Craven failed to establish the other alleged instances of retaliation as adverse employment actions. *Craven*, 2022 WL 2967310, at *7. These other alleged instances of retaliation include the reassignment of

what he expected to be his office to another employee, an allegedly demeaning note on his colleagues' computer monitor, and his office being moved to accommodate another employee. The Court concluded that, in detailing these instances of alleged retaliation, Craven failed to demonstrate any "objective indicia of material disadvantage." *Beyer*, 524 F.3d at 164. Rather, these actions were nothing more than "petty slight[s]" or "minor annoyance[s]." *Craven*, 2022 WL 2967310, at *7. In the SAC, Craven fails to provide any additional information about these allegations, therefore the Court's analysis in its prior decision remains controlling: Craven has failed to establish that these are adverse employment actions. His retaliation claims with respect to these actions are dismissed.

2. *Retaliation for Filing This Lawsuit*

The Court held in its prior Order that Craven had sufficiently established that filing the present lawsuit was a protected activity and that all Defendants became aware of the lawsuit by February 12, 2021.[11] *Craven*, 2022 WL 2967310, at *7. Additionally, the Court held that the termination proceedings commenced against Craven on June 24, 2021 constituted an adverse employment action. *Id.* However, the Court concluded that Craven failed to establish a causal connection between the filing of this lawsuit and the initiation of termination proceedings against him. *Id.* at *7–8.

In the FAC, Craven introduced no direct evidence of retaliatory animus beyond mere legal conclusions and conclusory allegations; all of which are insufficient to survive a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678, 681. Craven likewise failed to establish causal connection via temporal proximity. The Defendants initiated termination proceedings on June 24, 2021, more than four months after they became aware of the suit on February 12, 2021. Such a period is "simply too tenuous to establish causality in the absence of any further evidence." *Craven*, 2022 WL 2967310, at *8 (citing *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) and *McDowell v. North*

---

[11] The City of New York was served on February 9, 2021, and Detective Secreto was served on February 12, 2021. *Id.* at *7 n.6.

12

*Shore-Long Island Jewish Health System, Inc.*, 788 F. Supp. 2d 78, 83 (E.D.N.Y. June 2, 2011)).

In the SAC, however, Craven explains that the termination trial was initiated based on 2018 charges against him that had previously been deemed unsubstantiated. ¶ 93. The fact that the Defendants could have acted upon these 2018 charges at any point in the prior three years, but only did so shortly after he filed the present lawsuit, suggests a retaliatory motive. *Spencer v. Intl. Shoppes, Inc.*, No. 6 Civ. 2637 (JS) (MLO), 2010 WL 1270173, at *11 n.4 (E.D.N.Y. Mar. 29, 2010) (finding retaliatory animus when defendants could have commenced their litigation against the plaintiff much earlier, but only did so after the plaintiff engaged in protect activity); *Kreinik v. Showbran Photo, Inc.*, No. 2 Civ. 1172 (RMB) (DF), 2003 WL 22339268, at *8 (S.D.N.Y. Oct. 14, 2003) (same); *Yankelevitz v. Cornell U.*, No. 95 Civ. 4593 (PKL), 1996 WL 447749, at *6 (S.D.N.Y. Aug. 7, 1996), *on reconsideration in part*, No. 95 Civ. 4593 (PKL), 1997 WL 115651 (S.D.N.Y. Mar. 14, 1997) (same). While a period of more than four months is insufficient on its own to establish causation, Craven—by including these additional facts in the SAC—sufficiently suggests that the NYPD was motivated at least in part by retaliatory animus when it began a termination proceeding against him. *Terry v. Ashcroft*, 336 F.3d 128, 140–41 (2d Cir. 2003) (explaining that a retaliatory motive need only contribute to an adverse action, even if it is not the sole cause of the action). Accordingly, his retaliation claim with regards to the commencement of a termination proceeding may proceed and Defendants' motion to dismiss is denied on this claim.

Craven also newly alleges in the SAC that the Defendants retaliated against him when they subjected him to a disciplinary trial in May 2022. ¶ 97. However, this disciplinary trial occurred more than a year after the Defendants became aware of Craven's lawsuit. For the same reasons given in the Court's prior Order, *Craven*, 2022 WL 2967310, at *8, a time period of one year is too tenuous to establish retaliatory motive on its own. Unlike the termination proceedings, Craven provides no additional

13

evidence of retaliatory animus with respect to these disciplinary proceedings. Therefore, he fails to establish causation, and his retaliation claims involving these proceedings are dismissed.

### B. NYCHRL Retaliation Claims

The elements of retaliation under the NYCHRL are "identical" to those under the ADEA and NYSHRL, except that the NYCHRL employs a broader standard of an "adverse employment action" than its federal and state counterparts. *Jean-Pierre v. Citizen Watch Co. of Am., Inc.*, No. 18 Civ. 0507 (VEC), 2019 WL 5887479, at *15 (S.D.N.Y. Nov. 12, 2019) (quoting *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016)). Consequently, all retaliation claims that the Court has concluded are sufficiently pled under the ADEA and NYSHRL are likewise sufficiently pled under the NYCHRL. Because of the broader requirements of an "adverse employment action" under the NYCHRL, the Court need only determine whether the retaliation claims that were dismissed above for failure to plead an adverse action pursuant to the ADEA and NYSHRL may nevertheless proceed under the NYCHRL.[12]

Whereas the ADEA and NYSHRL require that an employee suffer a *materially* adverse action as a result of retaliation, the NYCHRL only requires that Craven was subject to an action that "would be reasonably likely to deter a person from engaging in protected activity." *Nieblas-Love*, 165 F. Supp. 3d at 70 (quoting *Leon v. Columbia Univ. Med. Ctr.*, No. 11 Civ. 8559 (NSR), 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013)). The NYCHRL, intended to serve "broad and remedial purposes," makes it illegal for an employer to retaliate "in any manner." *Sorrenti v. City of New York*, 851 N.Y.S.2d 61, N.Y. Sup. Ct. 2007); *see also Alexander v. Possible Productions, Inc.*, 336 F. Supp. 3d 187, 196 (S.D.N.Y. 2018). However, as the Second Circuit explained in *Fincher*, it is

---

[12] Craven's retaliation claim regarding the May 2022 disciplinary proceedings was dismissed above for failing to establish causation. Because the NYCHRL is subject to the same standard for pleading causation, this retaliation claim must also be dismissed under the NYCHRL.

14

unclear "whether or to what extent the 'reasonably likely to deter' standard of the [NYCHRL] differs from *Burlington Northern* [and *Kessler's*] 'well might have dissuaded' test." *Fincher v. Depository Tr. and Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010). Nevertheless, courts have continually recognized that "the NYCHRL's retaliation provision is broader than that under federal and state law."[13] *Gittens-Bridges v. City of New York*, No. 19 Civ. 272 (ER), 2022 WL 954462, at *18 (S.D.N.Y. Mar. 30, 2022); *Ya-Chen Chen v. City U. of New York*, 805 F.3d 59, 76 (2d Cir. 2015); *Selmanovic v. NYSE Group, Inc.*, No. 6 Civ. 3046 (DAB), 2007 WL 4563431, at *5 (S.D.N.Y. Dec. 21, 2007).

The adverse actions that were insufficient under the ADEA and NYSHRL—as determined above—include the reassignment of what Craven expected to be his office to another employee, an allegedly demeaning note on his colleagues' computer monitor, and his office being moved to accommodate another employee. In concluding that such actions were insufficient under the ADEA and NYSHRL, the Court in the instant opinion and in its prior Order described Craven's allegations regarding his office assignments as nothing more than "petty slight[s]" or "minor annoyance[s]." *Craven*, 2022 WL 2967310, at *7 (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)). Likewise, the Court noted that Craven provided no information about his working conditions after he was forced to relocate his workspace, "making it impossible to infer that he was disadvantaged by that decision." *Id.* Even under the broader requirements of the NYCHRL, "petty slights or minor annoyances" are insufficient to

---

[13] Some courts have suggested that the NYCHRL retaliation provisions—although its standard for adverse actions is worded slightly different—is not meaningfully different from that of the NYSHRL and its federal counterparts. *See Diaz v. City U. of New York*, No. 13 Civ. 2038 (PAC) (MHD), 2014 WL 10417871, at *27 (S.D.N.Y. Nov. 10, 2014), *report and recommendation adopted in part*, No. 13 Civ. 2038 (PAC) (MHD), 2015 WL 5577905 (S.D.N.Y. Sept. 22, 2015) ("Indeed, the Second Circuit has at least suggested that there is likely no significant difference between the two standards, although they are formulated in slightly different terms.") (citing *Fincher,* 604 F.3d at 723).

establish an adverse employment action. *Lott v. Coreone Techs., LLC*, No. 14 Civ. 5848 (CM), 2016 WL 462486, at *15 (S.D.N.Y. Feb. 2, 2016). Without more details about the disadvantages of his new workspace, the Court's prior analysis stands, and Craven's retaliation claims regarding his office assignments must be dismissed even under the more lenient NYCHRL.

Craven's retaliation claims regarding the allegedly demeaning note found on his colleague's computer must also be dismissed under the NYCHRL. The Court previously explained that it is not at all clear that this note was directed at Craven. *Craven*, 2022 WL 2967310, at *7. Even if it were, a note saying "THE BOSS" on another employee's computer can hardly be described as anything more than a "petty slight" or "minor annoyance." *Lott*, 2016 WL 462486, at *15. Accordingly, Craven's NYCHRL retaliation claim with respect to this note is dismissed.

### C. NYSHRL and NYCHRL Discrimination and Hostile Work Environment Claims

The Defendants assert that the Court's prior Order "directed" Craven to plead his NYSHRL and NYCHRL discrimination and hostile work environment claims in state court. Doc. 47 at 5 n.1 ("Given the Court's dismissal of [the federal discrimination and hostile work environment] claims and direction that Plaintiff plead his SHRL and CHRL claims in state court, Defendants will only address Plaintiff's ADEA, SHRL, and CHRL retaliation claims.").

This, however, is inaccurate. The Court only dismissed Craven's NYSHRL and NYCHRL claims because it had dismissed all federal claims and would no longer exercise supplemental jurisdiction over the non-federal claims. *Craven*, 2022 WL 2967310, at *8 ("Because no federal claim remains that is subject to a merits determination by this Court, it would be inappropriate to adjudicate Plaintiff's state law claims."). Because Craven has now sufficiently pled an ADEA retaliation claim in the

16

SAC, the Court may now exercise supplemental jurisdiction over Craven's discrimination and hostile work environment claims made under the NYSHRL and NYCHRL.[14]

Due to their own misunderstanding of the prior Order, the Defendants only addressed Craven's retaliation claims in their Memorandum in Support of the Motion to Dismiss, Doc. 47, and their Reply Brief, Doc. 56.  Because the Defendants fail to make any argument for the dismissal of Craven's NYSHRL and NYCHRL discrimination and hostile work environment claims, those claims may proceed.

### D. Individual Liability of the NYPD and Chief Secreto

The NYPD must be dismissed as a party to this suit because it is not a suable entity. *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (quoting N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.")).  Chief Secreto must likewise be dismissed as a party to Craven's ADEA claims because the ADEA does not impose individual liability. *Siclari v. New York City Dept. of Educ.*, No. 19 Civ. 7611 (AJN), 2020 WL 7028870, at *3 (S.D.N.Y. Nov. 30, 2020) ("Courts in this circuit have . . . consistently held that the ADEA . . . does not impose liability on individuals.").

The NYSHRL permits individual liability for discrimination, but only if the individual qualifies as an "employer" or "aided and abetted the unlawful discriminatory acts of others." *Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020).  An employer under the NYSHRL is "limited to individuals with ownership interest or supervisors, who themselves, have the authority to

---

[14] The NYSHRL and NYCHRL have longer time restrictions than the ADEA.  Whereas discrimination and hostile work environment claims under the ADEA must be initiated with 300 days of the alleged unlawful practice, those claims under the NYSHRL and NYCHRL may be brought up to 3 years after the alleged unlawful practice. *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 248–49 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013).  Craven filed this lawsuit on October 9, 2020.  ¶ 49.  Thus, any allegedly unlawful conduct that Craven suffered on or after October 9, 2017 may properly constitute discrimination and hostile work environment claims under the NYSHRL and NYCHRL.

17

hire and fire employees." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365–66 (S.D.N.Y. 2012) (quoting *Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 199 (E.D.N.Y. 2007) (internal quotation marks and citation omitted)). The NYCHRL, by contrast, "provides a broader basis for direct individual liability than the NYSHRL" because it applies to individuals "regardless of ownership or decision-making power." *Id.* at 366. Under both laws, however, the individual must have "actually participate[d]" in the conduct that gave rise to the claims. *Id.*

With regards to his discrimination and hostile work environment claims, Craven asserts that Chief Secreto never granted him a meeting to discuss his allegedly discriminatory transfers, ¶ 30–31; gave him a thirty-day suspension, ¶ 35; and subjected him to "road therapy," ¶ 45.[15] These acts, in addition to Craven's claim that Chief Secreto had "the ability to make decisions as to [his] employment," ¶ 12, suggest that Chief Secreto was a "supervisor[] . . . [with] the authority to hire and fire employees." *Malena*, 886 F. Supp. 2d at 366. Likewise, these acts suggest that Chief Secreto actually contributed to the discrimination and hostile work environment. Therefore, he may remain a party to Craven's discrimination and hostile work environment claims.

In contrast, Craven provides no information about Chief Secreto's role in any of the alleged retaliatory acts. Therefore, although he may be an "employer," Chief Secreto cannot be said to have "direct, purposeful participation" in the retaliation. *Dodd v. CUNY*, 489 F. Supp. 3d 219, 268 (S.D.N.Y. 2020). He cannot be held individually liable as an aider and abettor for the same reason: Craven provides no information whatsoever about Chief Secreto's role in the alleged retaliation. In the absence of any evidence that Chief Secreto actually participated in the retaliation, Chief Secreto must be dismissed as a party as to those claims.

---

[15] Craven additionally alleges in the SAC that Chief Secreto placed him on modified duty in November 2016. ¶¶ 20–22. Because this act occurred before October 9, 2017, it is time-barred under the NYSHRL and NYCHRL and may not be considered.

### E. Leave to Amend

Craven does not ask the Court for leave to amend his complaint. Even if he had, the Court would not grant it. Federal Rule of Civil Procedure 15 instructs courts to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). Leave to amend, however, should not be given if it would be futile; that is, "if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim." *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 347 Fed. App'x 617, 622 (2d Cir. 2009).

Craven has now had two opportunities to amend his complaint. Docs. 24, 41. His FAC was filed with the benefit Defendants' pre-motion letter, Doc. 18, which explained the deficiencies in his original complaint, and his SAC was filed with the benefit of the Court's Order that addressed the precise deficiencies in his FAC, *Craven*, 2022 WL 2967310. Having now had two chances to amend his complaint and fix its various deficiencies, Craven provides the Court with no reason to believe that a third chance would be anything but futile; therefore, leave to amend is not granted.

### IV. CONCLUSION

For the reasons stated above, the Defendants' motion is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' motion to dismiss all claims is GRANTED IN PART and DENIED IN PART, their motion to dismiss the NYPD is GRANTED, and their motion to dismiss Chief Secreto is GRANTED IN PART and DENIED IN PART. Thus, the following claims may proceed: the discrimination and hostile work environment claims under the NYSHRL and NYCHRL against the City of New York and Chief Secreto, as well as the remaining retaliation claims under the

ADEA, NYSHRL, and NYCHRL against the City of New York.  An initial pre-trial conference will be held on May 10, 2023 at 10:00 a.m. by telephone.  The parties are instructed to dial (877) 411-9748 and enter access code 3029857# when prompted.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 46.

It is SO ORDERED.

Dated:    April 26, 2023
             New York, New York

EDGARDO RAMOS, U.S.D.J.